

**Signed April 26, 2012.**

_____
**H. CHRISTOPHER MOTT**
**UNITED STATES BANKRUPTCY JUDGE**
_____

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| JOHN OLIVER GREEN | § | Case No. 10-11781-HCM |
| Debtor. | § | (Chapter 7) |
| | § | |
| JOHN OLIVER GREEN, | § | |
| Plaintiff | § | Adv.  No. 11-1238-HCM |
| | § | |
| vs. | § | |
| | § | |
| UNITED STATES OF AMERICA | § | |
| (INTERNAL REVENUE SERVICE), | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**
**(1) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE #9) AND**
**(2) DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT (DE #15)**

This adversary proceeding pits plaintiff, debtor and taxpayer John Oliver Green ("Plaintiff Green")-- who is no stranger to the Bankruptcy Court, Tax Court, and Fifth Circuit Court of Appeals--against defendant United States of America, on behalf of the Internal Revenue Service ("Defendant IRS")--which is also no stranger  to the Bankruptcy Court, Tax Court, and Fifth Circuit Court of Appeals.

1

Plaintiff Green filed this adversary proceeding to determine whether his federal income tax liabilities for the years 1997, 1999, and 2000 were discharged in this Chapter 7 bankruptcy case, and to determine the validity and amount of federal tax liens.  Defendant IRS filed a Motion for Summary Judgment, and Plaintiff Green filed a Cross-Motion for Summary Judgment.  For the reasons stated in this Memorandum Opinion, the Court grants the Defendant's Motion for Summary Judgment and denies Plaintiff's Cross-Motion for Summary Judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure ("FRCP"), which are incorporated into Rule 7056 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules").

## I. PROCEDURAL BACKGROUND

On September 26, 2011, Plaintiff Green, *pro se,* filed his Complaint to Determine Dischargeability of Tax Claims and Validity and Extent of Lien Rights ("Complaint") (DE #1). In general, through the Complaint, Plaintiff Green requested that the Court determine that his unpaid federal tax liabilities for the years 1997, 1999, and 2000 have been discharged in this Chapter 7 case, to determine the validity and extent of Defendant IRS' lien rights, and to enforce his bankruptcy discharge. On October 6, 2011, Defendant IRS filed its Answer to the Complaint ("Answer") (DE #4). In general, in its Answer, Defendant IRS requested the Court to determine that Plaintiff Green's federal tax liabilities for the 1997, 1999, and 2000 years were not discharged in this Chapter 7 case and that its federal tax liens attached to Plaintiff Green's assets. On November 21, 2011, Plaintiff Green filed his Amended Verified Reply With Incorporated Legal Authority to the Answer ("Reply") (DE #8).

On November 23, 2011, Defendant IRS filed a Motion for Summary Judgment ("Defendant's MSJ") (DE #9), together with its Declaration (DE #10). On December 15, 2011, Plaintiff Green filed its Opposition to Defendant's MSJ with Incorporated Memorandum of Law (DE #16). On January 11, 2012, Defendant IRS filed its Response to Plaintiff's Opposition to Defendant's MSJ (DE #29), and a Corrected Declaration in Support of Defendant's Response (DE# 33).[1] On January 20, 2012, Plaintiff Green filed his Reply to Defendant's Response (DE #36).

---

[1]     On January 11, 2012, Defendant IRS filed a Motion to Redact (DE #31), seeking to restrict from public access the original Declarations filed in support of its Responses (DE # 28, 32), due to Plaintiff's social security number being contained in an exhibit to the original Declarations. Such Motion was granted (DE # 34), and Corrected Declarations were filed by the IRS on January 11, 2012 (DE #32, 33).

Meanwhile, on December 15, 2011, Plaintiff Green filed his Cross-Motion for Summary Judgment With Incorporated Memorandum of Law ("Plaintiff's MSJ") (DE #15). On January 11, 2012, Defendant IRS filed a Response in Opposition to Plaintiff's Cross-Motion for Summary Judgment  (DE #27), along with a Corrected Declaration in Support (DE # 32). On January 20, 2012, Plaintiff Green filed a Reply to Defendant's Response in Opposition to Plaintiff's MSJ (DE #37).

On February 9, 2012, the Court conducted a hearing on Defendant's MSJ and Plaintiff's MSJ, and took its ruling under advisement. Plaintiff Green and counsel of record for Defendant IRS appeared and made arguments and stipulations at the hearing.

On February 9, 2012 after the hearing and pursuant to FRCP 56(e)(1), the Court signed an Order Granting Leave to Supplement Summary Judgment Record (DE #38), authorizing the parties to file supplements or stipulations with respect to the outstanding amount of taxes and tax liens. Pursuant to such Order, on February 24, 2012, Plaintiff Green and Defendant IRS filed a Joint Supplement to Summary Judgment Record ("Joint Supplement Stipulation") (DE #40), whereby the parties stipulated to certain facts with respect to the amount of outstanding taxes and federal tax liens.

## II. JURISDICTION

The Court has jurisdiction over this adversary proceeding under 28 U.S.C §157 and §1334. This adversary proceeding is a "core proceeding" under 28 U.S.C. §157(b)(2)(I) and (K), and the Court is authorized to enter a judgment in this adversary proceeding under 28 U.S.C. §157(b)(1).

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when a movant shows that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *See* FRCP 56(a); *Piazza's Seafood World, LLC v. Odom,* 448 F.3d 744, 752 (5th Cir.2006); *Placid Oil Co. v. Williams (In re Placid Oil Co.),* 450 B.R. 606, 612 (Bankr. N.D. Tex. 2011). A genuine issue of material fact is present when the evidence is such that a reasonable fact finder could return a verdict for the non-movant. *Piazza's Seafood,* 448 F.3d at 752 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). Material facts are those that could affect the outcome of the action. *Wyatt v. Hunt Plywood Co., Inc.,* 297 F.3d 405, 409 (5th Cir.2002), *cert. denied,* 537 U.S. 1188 (2003).

In the summary judgment context, the court should view evidence in a light most favorable to the non-moving party. *Piazza's Seafood,* 448 F.3d at 752. Factual controversies must be resolved in favor of the non-movant. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994). If the movant satisfies its burden, the non-movant must then come forward with specific evidence to show that there is a genuine issue of fact. *Placid Oil,* 450 B.R. at 613, citing *Ashe v. Corley,* 992 F.2d 540, 543 (5th Cir.1993). The non-movant may not merely rely on conclusory allegations or the pleadings; rather, it must demonstrate specific facts identifying a genuine issue to be tried in order to avoid summary judgment. FRCP 56 (c)(1); *Piazza's Seafood,* 448 F.3d at 752; *Placid Oil,* 450 B.R. at 613.

## IV. <u>UNDISPUTED MATERIAL FACTS</u>

Based on the summary judgment record, the following material facts are not in genuine dispute:

Plaintiff Green's federal tax liabilities for the years at issue--1997, 1999, and 2000--have previously been litigated with Defendant IRS and adjudicated by the U.S. Tax Court ("Tax Court") and affirmed by the Fifth Circuit Court of Appeals. *See Green v. Commissioner*, T.C. Memo 2008-130 (T.C.M. RIA 2008) ("Tax Court Opinion"); *Green v. Commissioner*,  322 F. App'x. 412 (5th Cir. 2009) ("Fifth Circuit Opinion"). (DE # 10, pp. 13-27; DE #15-1, pp. 30-31; DE #10, pp. 28-36).

Plaintiff Green is a former federal civil service employee (with the IRS). Plaintiff Green received disability-retirement payments for a medical condition from the Office of Personnel Management ("OPM").  Plaintiff Green is also a tribal member of the Potowatomi Citizens Tribe of Oklahoma. (DE #10, pp. 16, 29-31).

This bankruptcy case is not Plaintiff Green's first visit to the Bankruptcy Court. Plaintiff Green has filed Chapter 7 bankruptcy before in 1996 in this Court, case no. 96-13645-FM ("First Bankruptcy Case"). Plaintiff Green filed an adversary proceeding against Defendant IRS in the First Bankruptcy Case, adversary no. 97-1044-FM, regarding his federal income tax liabilities for the years 1981, 1982, and 1983. Such adversary proceeding and the dischargeability of Plaintiff Green's tax liabilities for those years (1981, 1982, 1983) were resolved by an Agreed Judgment entered into between Plaintiff Green and Defendant IRS and signed by this Court on June 30, 1998 ("Agreed Bankruptcy Judgment") (DE# 8-1, pp. 48, 49). Plaintiff Green's federal tax liabilities for the years at

4

issue in this adversary proceeding and this second bankruptcy case—1997, 1999, and 2000—were not addressed in Plaintiff Green's First Bankruptcy Case filed in 1996.

After an IRS internal examination of his tax liability for 1997, 1998, 1999, and 2000,[2] Defendant IRS issued notices of deficiency to Plaintiff Green, although the notices were not mailed to Plaintiff Green's proper address. Plaintiff Green filed a petition in Tax Court, but Defendant IRS filed a Motion to Dismiss for Lack of Jurisdiction in order to send the deficiency notices to the correct address and provide Plaintiff Green time to correctly challenge the deficiencies. The Tax Court granted the Motion and entered an order to dismiss for lack of jurisdiction on April 5, 2005. (DE #8-1, p. 79; DE #10, pp. 16, 29).

Defendant IRS issued a new notice of deficiency to Plaintiff Green at his correct address.  On June 27, 2005, Plaintiff Green then timely filed a petition in Tax Court to contest the deficiencies for the 1997, 1999, and 2000 tax years, and litigation on the merits in Tax Court proceeded. (DE #8-1, pp. 61-63; DE #10, p. 16, 29).

In Tax Court, Plaintiff Green contested the deficiency on multiple grounds. According to the Tax Court Opinion, Plaintiff Green did not file federal income tax returns for 1997, 1999, and 2000 using the traditional documentation. Instead, Plaintiff Green submitted what has been referred to as "treaty-based position disclosure documents" (described by the Tax Court as "disclosure documents"). Plaintiff Green claimed authority to do so pursuant to Section 6114 of the Internal Revenue Code (herein "IRC").  Plaintiff Green claimed in Tax Court that due to his status as a member of the Potawaomi Citizens Tribe of Oklahoma, his treaty-based "disclosure documents" constituted "tax returns" that triggered the running of the statute of limitations. *See* Tax Court Opinion (DE #10, pp. 15-16).

One of the central issues decided by the Tax Court was whether these treaty-based "disclosure documents" filed by Plaintiff Green for 1997, 1999, and 2000 constituted federal income tax returns. Plaintiff Green argued in Tax Court that his "disclosure documents"

---

[2]  Defendant IRS contends that it prepared "6020(b)" returns for Plaintiff Green for the tax years at issue, and for this reason (among others), Plaintiff Green's tax liabilities were not discharged in this bankruptcy. (DE #29, p. 4).  In general, section 6020(b) of the Internal Revenue Code ("IRC") authorizes the Secretary to "make" and "subscribe" a 6020(b) return for a taxpayer that fails to timely file a return. 26 U.S.C. §6020(b). The factual support in the summary judgment record for the proposition that the IRS prepared 6020(b) returns for Plaintiff Green appears only to be IRS account transcripts (DE #10, pp.3-11). The Court is unable to conclude that such IRS transcripts alone are sufficient to establish the fact that the IRS prepared 6020(b) returns for Plaintiff Green in the context of summary judgment. *See e.g., Piazza's Seafood*, 448 F.3d at 752 (a court should view summary judgment evidence in light most favorable to non-movant). Should this proceeding ever go to trial, Defendant IRS may well be able to prove it prepared 6020(b) returns for Plaintiff Green, but based on the summary judgment evidence, the Court cannot determine that there is no genuine dispute as to this fact.

were federal income tax returns, and thus the three-year statute of limitations on assessing a deficiency had expired. The Tax Court rejected Plaintiff Green's argument, and determined that Plaintiff Green's treaty-based "disclosure documents" did not constitute tax returns, that Plaintiff Green "never filed tax returns for the years 1997, 1999, and 2000", and that the statute of limitation did not bar the deficiency assessment for such years. *See* Tax Court Opinion (DE#10, pp. 16-20). The Tax Court also rejected Plaintiff Green's other arguments, and affirmed the Defendant IRS' determination of deficiencies, penalties, and interest for 1997, 1999, and 2000. *See* Tax Court Opinion (DE #10); Fifth Circuit Opinion, 322 F. App'x. at 414 (DE #10, p. 29). Following Plaintiff Green's appeal to the Fifth Circuit, the Fifth Circuit affirmed the Tax Court in all respects. In so doing, the Fifth Circuit stated "[w]e have little difficulty concluding that Green's homemade 'disclosure documents' are not returns. They do not purport to be returns; in fact they state that they are tendered to the IRS because 'no return of tax is required to be filed'...". *See* Fifth Circuit Opinion, 322 F. App'x. at 415 (DE #10, p. 31).

The Tax Court Opinion was issued by the Tax Court on May 15, 2008. (DE #10, p. 13). Pursuant to Tax Court Rule 155, the Tax Court withheld entry of a decision and allowed the parties to submit a computation of the tax deficiency in accordance with the Tax Court Opinion. (DE #8-1, p. 62; DE #10, p.27). On June 24, 2008, Respondent's Computation for Entry of Decision was filed with the Tax Court under Tax Court Rule 155 and signed by both parties ("Rule 155 Computation"). (DE #15-1, pp. 9-29). The Rule 155 Computation includes a face document, a computation statement, and lodging of a proposed decision. The face document to the Rule 155 Computation states: "The computation is submitted without prejudice to respondent's right to contest the correctness of the decision entered herein by the Court", and this page is signed by the Chief Counsel's office for Defendant IRS. On the following page, the face document to the Rule 155 Computation states: "Without prejudice to the right of appeal, it is agreed that the attached computation is in accordance with the opinion of the Tax Court in this case", and this page is signed by Tax Court counsel for Plaintiff Green. (DE #15-1, pp. 10,11).

On June 27, 2008, the Tax Court entered its decision ("Tax Court Decision"). (DE #15-1, pp. 30-31). The Tax Court Decision determined Plaintiff Green was liable for tax deficiencies and additions for the years 1997, 1999, and 2000 in specified dollar amounts. The Tax Court Decision provides in part "Pursuant to the opinion of the Court filed May 15, 2008, incorporating herein the facts recited in the respondent's computation as the findings

of the Court….". (DE#15-1, p.30).     The Tax Court Decision was signed by respective counsel for Defendant IRS and Plaintiff Green, and states: "The parties stipulate that the foregoing decision is in accordance with the opinion of the Court and respondent's computation, and that the Court may enter this decision, without prejudice to the right of either party to contest the correctness of the decision entered herein". (DE#15-1, p.31).

Then, Plaintiff Green appealed the decision of the Tax Court to the Fifth Circuit. The Fifth Circuit affirmed the decision of the Tax Court in all respects, by its opinion dated April 23, 2009. *See* Fifth Circuit Opinion, 322 F. App'x. at 413 (DE #10, pp. 28-35). Plaintiff Green did not file any request for reconsideration, further appeal or petition for writ of certiorari with respect to the Fifth Circuit Opinion.

On December 10, 2009, Defendant IRS prepared a Notice of Federal Tax Lien against Plaintiff Green's assets for the federal tax liabilities in the 1997, 1999, and 2000 tax years. The Notice of Federal Tax Lien was filed in Travis County, Texas, on December 28, 2009. (DE #8-1, p.78; DE #10, p.12).

On June 30, 2010, Plaintiff Green filed a voluntarily bankruptcy petition under Chapter 7 in this Court in this main bankruptcy case no. 10-11781. In his Bankruptcy Schedules, Plaintiff Green listed the tax debt owed to the IRS for income tax for years 1997, 1999, 2000 (totaling approximately $93,917) as being totally unsecured by any value of collateral, as well as being unliquidated and disputed. Creditors were instructed by the Court not to file proofs of claims, as the bankruptcy case was determined to be a no asset case with no distributions from the bankruptcy estate by the Chapter 7 Trustee.  On October 11, 2010, Plaintiff Green received his Chapter 7 bankruptcy discharge in this bankruptcy case.  (main bankruptcy case no. 10-11781, DE #1; DE #2, pp. 1, 16, 17; DE #13).

On September 26, 2011, Plaintiff Green initiated this adversary proceeding against Defendant IRS by filing his Complaint to determine that his federal income tax liabilities for 1997, 1999, and 2000 were discharged in this bankruptcy case and to determine the validity and extent of the federal tax lien. (DE #1).

On November 23, 2011, Defendant IRS filed a Motion for Summary Judgment (herein "Defendant's MSJ") (DE #9). On December 15, 2011, Plaintiff Green filed his Cross-Motion for Summary Judgment With Incorporated Memorandum of Law (herein "Plaintiff's MSJ") (DE #15). On February 9, 2012, the Court conducted a hearing on Defendant's MSJ and Plaintiff's MSJ.

On February 24, 2012, Plaintiff Green and Defendant IRS filed a Joint Supplement to Summary Judgment Record (herein "Joint Supplement Stipulation") (DE #40), as authorized by order of the Court. Through such Joint Supplement Stipulation, Plaintiff Green and Defendant IRS stipulated in this adversary proceeding that (1) if it determined that Plaintiff Green's federal tax liabilities for the years 1997, 1999, and 2000 are not discharged in this bankruptcy case, then as of February 14, 2012, the unpaid amount of Plaintiff Green's federal tax liability for the 1997 year is $71,087.54, for the 1999 tax year is $4,429.56, and for the 2000 tax year is $3,874.72[3] (which excludes penalties and interest on penalties that the parties stipulated have been discharged) (hereafter "Taxes"); (2) if these Taxes are determined not to be discharged in this bankruptcy case, then the IRS federal tax lien is properly filed in the foregoing amounts and attaches to all of Plaintiff Green's real and personal property; and (3) if these Taxes are determined to be discharged in this bankruptcy case, then Defendant IRS will abate all amounts due for such tax years and release its federal tax lien.

Therefore, the parties have now stipulated with respect to the amount of the unpaid taxes for 1997, 1999, and 2000 (herein "Taxes") and the validity and scope of the tax lien of Defendant IRS, dependent upon whether or not the Taxes have been discharged in this bankruptcy case. Accordingly, the only remaining disputed issue for the Court to determine is whether Plaintiff Green's Taxes for the years 1997, 1999, and 2000 have been discharged in this bankruptcy case.

## V. LEGAL ANALYSIS

### A. DISCHARGABILITY OF TAXES

The primary disputed issue for this Court to determine is whether Plaintiff Green's unpaid federal income tax liabilities for the 1997, 1999, and 2000 tax years (herein "Taxes") have been discharged in this Chapter 7 bankruptcy case. In Defendant's MSJ, Defendant IRS takes the position that the Taxes were not discharged in Plaintiff Green's bankruptcy case. Conversely, in Plaintiff's MSJ, Plaintiff Green takes the position that the Taxes were discharged in this Chapter 7 bankruptcy case.

---

[3]     The first page of the Joint Supplement Stipulation lists the tax liability for the 2000 year as $3,9̲74.72; but the Court assumes this is a typographical error as the attached Exhibit 1 (updated federal tax lien) and Exhibit 2 (updated IRS transcript) show that the tax liability for such year is $3,8̲74.72.

Section 727 of the Bankruptcy Code permits the discharge of debts in a Chapter 7 bankruptcy case, but contains several exceptions. One of the exceptions to debt discharge are certain tax debts set forth in §523 of the Bankruptcy Code. *See* 11 U.S.C. §727(b); *McCoy v. Mississippi State Tax Commission (In re McCoy)*, 666 F.3d 924, 926 (5th Cir. 2012).

### ISSUE #1. Are the Taxes excepted from discharge under §523(a)(1)(B)(i) of the Bankruptcy Code?

The primary position of the IRS is that the Taxes owed by Plaintiff Green are excepted from his bankruptcy discharge under §523(a)(1)(B)(i) of the Bankruptcy Code, because Plaintiff Green never filed a tax return for the 1997, 1999, and 2000 tax years.

In pertinent part, §523(a)(1)(B)(i) of the Bankruptcy Code provides:

> (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—
>    (1) for a tax…—
>         (B) with respect to which a *return,* or equivalent report or notice, if required—
>                 (i) *was not filed or given* ....

11 U.S.C. §523(a)(1)(B)(i) (emphasis added).

In 2005, Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (hereafter "BAPCPA"). As part of the BAPCPA amendments to the Bankruptcy Code, a hanging paragraph was added to §523(a), which defined the term "return" for bankruptcy discharge purposes. *See McCoy,* 666 F.3d at 927. This hanging paragraph of §523(a) is often identified as §523(a)(*), and provides:

> For purposes of this subsection, the term 'return' means a return that satisfies the requirements of applicable nonbankruptcy law (including applicable filing requirements). Such term includes a return prepared pursuant to section 6020(a) of the Internal Revenue Code of 1986, or similar State or local law, or a written stipulation to a judgment or a final order entered by a nonbankruptcy tribunal, but does not include a return made pursuant to section 6020(b) of the Internal Revenue Code of 1986, or a similar State or local law.

11 U.S.C. §523(a)(*).

In Plaintiff Green's MSJ and related responses and replies, Plaintiff Green makes a myriad of arguments that he filed or gave a qualifying tax "return" within the scope of

9

§523(a)(*), and so the Taxes at issue are not excepted from discharge under §523(a)(1)(B)(i).  Plaintiff Green's primary arguments,  although sometimes difficult to follow,  may be summarized as follows:  (1) the treaty-based "disclosure documents" he submitted to the IRS were a qualifying "return" because they satisfied "the requirements of applicable nonbankruptcy law"(federal income tax law) under §523(a)(*) of the Bankruptcy Code; (2) the Rule 155 Computation entered into with the IRS in Tax Court was a "return prepared pursuant to Internal Revenue Code section 6020(a)" under §523(a)(*) of the Bankruptcy Code; (3) the Tax Court Decision (and the Rule 155 Computation) signed on his behalf in Tax Court  is a qualifying "return", as it constitutes a "written stipulation to a judgment or final order entered by a nonbankruptcy tribunal" under §523(a)(*) of the Bankruptcy Code; and finally (4) the treaty-based "disclosure documents" he submitted were a qualifying "return", because they were an "equivalent report or notice" within §523(a)(1)(B) of the Bankruptcy Code.

Applying the plain language of §523(a)(*) to this proceeding, there are three possible types  of qualifying "returns" for bankruptcy discharge purposes: (a) a "return" that satisfies the requirements of applicable nonbankruptcy law (including applicable filing requirements), (b) a "return" prepared pursuant to §6020(a) of the Internal Revenue Code (herein "IRC"), and (c) a written stipulation to a judgment or a final order entered by a nonbankruptcy tribunal (Tax Court).  The Court will address each of these three possibilities of a qualifying "return" under §523(a)(*) in turn, as well as whether there as an "equivalent report or notice" within the meaning of §523(a)(1)(B).

### a. Has there been a "return that satisfies the requirements of applicable nonbankruptcy law (including applicable filing requirements)" under §523(a)(*) of the Bankruptcy Code for the Taxes?

Plaintiff Green claims the treaty-based "disclosure documents" he filed with the IRS for the Taxes was a "return" for federal income tax purposes, and so he has filed a return that meets the requirements of "applicable nonbankruptcy law" under §523(a)(*). Here, the applicable nonbankruptcy law" is federal tax law, as the Taxes are federal taxes.

However, in prior litigation between Plaintiff Green and the IRS regarding these very Taxes, the Tax Court and the Fifth Circuit determined that Plaintiff Green's "disclosure documents" were not tax returns under federal income tax law.  Plaintiff Green argued in Tax Court that his "disclosure documents" were federal income tax returns, and thus the

three year statute of limitations on assessing a deficiency had expired. The Tax Court rejected this argument, determined that Plaintiff Green's treaty-based "disclosure documents" did not constitute tax returns, and that Plaintiff Green "never filed tax returns for the years 1997, 1999, and 2000". *See Green v. Commissioner,* T.C. Memo 2008-130, pp. 4-7 (T.C.M. RIA 2008) (DE#10, pp.16-20)(herein "Tax Court Opinion").    Following Plaintiff Green's appeal to the Fifth Circuit, the Fifth Circuit affirmed the Tax Court in all respects. In so doing, the Fifth Circuit stated "[w]e have little difficulty concluding that Green's homemade 'disclosure documents' are not returns. They do not purport to be returns; in fact they state that they are tendered to the IRS because 'no return of tax is required to be filed'...". *See Green v. Commissioner*, 322 F. App'x. 412, 415 (5th Cir. 2009) (DE #10, p. 31) (herein "Fifth Circuit Opinion").

Defendant IRS argues, and the Court agrees, that res judicata applies to prevent Plaintiff Green from re-litigating this issue—whether his disclosure documents satisfied the requirements of federal tax law and constituted federal tax returns--in this subsequent adversary proceeding. Res judicata, or claim preclusion, applies to bar re-litigation of an issue if four requirements are met. *See e.g., United States v. Davenport,* 484 F.3d 321, 326 (5th Cir. 2007). First, the parties in the second action must be identical or in privity with the parties in the prior action.   Second, the judgment in the prior action must have been rendered by a court of competent jurisdiction.   Third, the prior action must have concluded with a final judgment on the merits. Fourth, the same claim or cause of action must be involved in both actions. *Id.* The res judicata effect of a prior judgment is a question of law. *Davenport,* 484 F.3d at 326 (citations omitted).

Here, all of the requirements of res judicata are met as a matter of law. The two parties in this adversary proceeding (Plaintiff Green and Defendant IRS) are identical to the parties to the Tax Court and Fifth Circuit case. The Tax Court and Fifth Circuit were clearly courts of competent jurisdiction. The prior action in the Tax Court and the Fifth Circuit was concluded with a final judgment on the merits.  Finally, the same claim or cause of action was involved and decided –as the Tax Court and Fifth Circuit determined that Plaintiff Green's "disclosure documents" were not returns for the 1997, 1999, and 2000 tax years and did not meet the applicable filing requirements of federal tax law. As a result, Plaintiff Green is precluded from re-litigating the issue regarding whether his "disclosure documents" satisfied the requirements of applicable federal tax law and constituted federal tax returns.

Plaintiff Green has also raised a collateral estoppel/res judicata type argument. In substance, Plaintiff Green appears to argue that in the Agreed Bankruptcy Judgment in his First Bankruptcy Case, IRS counsel agreed to accept reports of income on OPM payments as Plaintiff Green's "sole obligation", and thus the IRS is somehow "estopped" from taking the position that his treaty-based disclosure documents for 1997, 1999, and 2000 did not satisfy the tax return filing requirements of federal tax law. (DE #7, p. 9; Agreed Bankruptcy Judgment, DE #16, pp. 14-15).

Plaintiff Green's argument is completely meritless on several levels. First, the First Bankruptcy Case was filed by Plaintiff Green in 1996, and the adversary proceeding with the IRS in the First Bankruptcy Case could not have addressed subsequent tax liabilities and filing obligations of Plaintiff Green that are at issue in this adversary proceeding (taxes for 1997, 1999, and 2000). Indeed, the Agreed Bankruptcy Judgment expressly deals only with Plaintiff Green's 1981, 1982, and 1983 tax liabilities. (DE#16, pp. 14-15, ¶¶ 1-4, 6) Second, the Agreed Bankruptcy Judgment does not even address (expressly or impliedly) Plaintiff Green's tax liabilities or tax return filing obligations for 1997, 1999 and 2000.  Third, the paragraph in the Agreed Bankruptcy Judgment upon which Plaintiff Green seizes, including the phrase "sole obligation", deals with delivery of OPM forms, with a copy to counsel for the IRS. (DE#16, p. 15, ¶5d). This paragraph has nothing to do with 1997, 1999 and 2000 year tax return filing obligations or treaty-based disclosure documents satisfying federal income tax filing requirements. And finally, if Plaintiff Green really thought the Agreed Bankruptcy Judgment somehow satisfied his tax return filing obligations for the 1997, 1999, and 2000 tax years, he could have and should have raised it in the Tax Court litigation which he filed in 2005, where the issue of his failure to file tax returns for 1997, 1999, and 2000 was litigated by Plaintiff Green with Defendant IRS.

Accordingly, for any and all of these reasons, the Court concludes that, as a matter of law, there has not been a return that satisfies the "requirements of applicable nonbankruptcy law (including applicable filing requirements)" under §523(a)(*) of the Bankruptcy Code for the Taxes.

**b. Has there been a "return prepared pursuant to section 6020(a) of the Internal Revenue Code" under §523(a)(*) of the Bankruptcy Code for the Taxes?**

Next, Plaintiff Green argues that the Rule 155 Computation entered into by the parties in Tax Court constitutes a "return" prepared pursuant to  IRC §6020(a). And, as his

argument goes, because a IRC §6020(a) return is a qualifying "return" within the meaning of §523(a)(*) for bankruptcy discharge purposes, the Taxes at issue have been discharged. Plaintiff Green's argument here--that a Rule 155 Computation constitutes a §6020(a) return-- is a novel and unprecedented argument.

Section 6020 of the Internal Revenue Code (herein "IRC") authorizes the IRS to make a return if the taxpayer fails to file a required return. The return can be made pursuant to either IRC §6020(a) or §6020(b). Section 6020(a) of the IRC provides the following statutory requirements:

> If any person shall fail to make a return required by this title or by regulations prescribed thereunder, but shall consent to disclose all information necessary for the preparation thereof, then, and in that case, the Secretary may prepare such return, which, being *signed* by such person, *may be received by the Secretary as the return of such person.* (emphasis added).

26 U.S.C. §6020(a).

A return prepared pursuant to §6020(a) is a return in which the IRS, in cooperation with the taxpayer, fills out a return, usually on a Form 1040 or Form 870, and the taxpayer signs the  tax return. *See Bergstrom v. United States* (*In re Bergstrom),* 949 F.2d 341, 343 (10th Cir. 1991) (citations omitted). Section 6020(a) returns are those "in which a taxpayer has failed to file his or her returns on time nonetheless discloses all information necessary for the I.R.S. to prepare a substitute return that the taxpayer can then sign and submit". *McCoy*, 666 F. 3d at 928.

Here, the Rule 155 Computation entered into on behalf of Plaintiff Green with the IRS in June 2008 (DE #15-1, pp. 9-29) does not and cannot be considered a valid §6020(a) return for multiple reasons.  First of all, the Rule 155 Computation is simply not a tax return, and is neither on Form 1040, Form 870, or other substitute return form.  Second, the Rule 155 Computation  was not received by the IRS (Secretary) as a return of the taxpayer Plaintiff Green —which is a statutory requirement for a valid §6020(a) return. The IRS Account Transcript for the years at issue (DE #10, pp. 3-11), show substitute returns prepared and received by the IRS in 2002—almost 6 years before the Rule 155 Computation in June 2008. Such IRS Account Transcript also demonstrates that the IRS (Secretary) did not receive or treat the Rule 155 Computation as a "return". Third, the Rule 155 Computation was not signed by the taxpayer (Plaintiff Green), which is another statutory requirement of a valid §6020(a) return (DE #15-1, pp. 9-29).

Furthermore, the Rule 155 Computation entered into on behalf of Plaintiff Green and the IRS was made pursuant to Tax Court Rule 155(a).  Tax Court Rule 155(a) permits the parties to submit computations of tax liabilities based on the determinations in the opinion rendered by the Tax Court.  Plaintiff Green did not agree to liability through the Rule 155 Computation; Plaintiff Green's tax counsel signature on the Rule 155 Computation states that it is "without prejudice to the right of appeal, it is agreed that the attached computation is in accordance with the opinion of the Tax Court in this case". (DE #15-1, pp. 10,11). And indeed, Plaintiff Green continued (unsuccessfully) to contest and appeal the Tax Court Decision and his tax liabilities to the Fifth Circuit.

The Rule 155 Computation was also entered into in June 2008, many years after Plaintiff Green's tax returns for the 1997, 1999, and 2000 tax years were due.  Under any scenario, even if somehow this Computation constituted "returns"; they were late-filed returns. *See McCoy*, 666 F. 3d at 929-932 (holding that late-filed state income tax return is not a "return" for bankruptcy discharge purposes, unless it is filed under a safe harbor similar to §6020(a) of the IRC; and indicating the same would be true for federal tax returns); *Hernandez v. Internal Revenue Service (In re Hernandez)*, 2012 WL 78668 (Bankr. W. D. Tex. January 11, 2012) (concluding, in the wake of *McCoy*, that late-filed federal tax return cannot be treated as a filed return for §523(a) discharge purposes, unless narrow §6020 return exception is met). It must also be noted that the Rule 155 Computation in June 2008 was several years after notices of deficiency were issued by the IRS to Plaintiff Green in 2003 and 2005 for the tax years at issue. *See* Tax Court Opinion (DE #10, p. 16); Fifth Circuit Opinion (DE #10, p. 29).  Given the timing and context of the Rule 155 Computation, it did not and could constitute a return under §6020(a) of the Internal Revenue Code, and thus does not qualify as a "return" under §523(a)(*) of the Bankruptcy Code.

Here, in essence, Plaintiff Green seeks to impermissibly expand the meaning of a §6020(a) return so he can try to fit within the second sentence of §523(a)(*) of the Bankruptcy Code and obtain discharge of his taxes. In *McCoy,* the Fifth Circuit described the second sentence of §523(a)(*) as carving out a "narrow" exception to the definition of return for a §6020(a) return.  *McCoy*, 666 F. 3d at 932; *see also Hernandez*, 2012 WL 78668 at *4 (concluding that the §6020 return exception to the §523(a)(*) definition of return is a "narrow one").  In light of this narrow exception, the Court cannot accept Plaintiff Green's extremely broad (and unprecedented) interpretation that the Rule 155 Computation somehow constituted a §6020(a) return.

Accordingly, for any or all of these reasons, the Court concludes that, as a matter of law, there has not been a "return prepared pursuant to §6020(a) of the Internal Revenue Code" under §523(a)(*) of the Bankruptcy Code for the Taxes.

### c. Has there been a "written stipulation to a judgment or a final order entered by a nonbankruptcy tribunal" that would constitute a return under §523(a)(*) of the Bankruptcy Code for the Taxes?

Plaintiff Green next argues that the Tax Court Decision (and perhaps the Rule 155 Computation) filed and entered in Tax Court, which his counsel signed, qualifies as a "written stipulation to a judgment or final order entered by a non-bankruptcy tribunal" under §523(a)(*) of the Bankruptcy Code.[4] And, as his argument goes, the Tax Court Decision is thus a "return" within the meaning of §523(a)(*) for bankruptcy discharge purposes, and the Taxes at issue have been discharged.

Plaintiff Green's argument here relies primarily on the fact that his counsel signed the Tax Court Decision and Rule 155 Computation.  However, the Tax Court Decision signed by his counsel states: "The parties stipulate that the foregoing decision is in accordance with the opinion of the Court and the respondent's computation, and that the Court may enter this decision, *without prejudice to the right of either party to contest the correctness of the decision entered herein*" (emphasis added). (DE #15-1, pp. 30-31). Further, the Rule 155 Computation signed by his counsel (the respondent's computation referred to in the Tax Court Decision) states:  "*Without prejudice to the right of appeal*, it is agreed that the attached computation is in accordance with the opinion of the Tax Court in this case" (emphasis added). (DE #15-1, p.11).

Defendant IRS disagrees and argues that only a stipulated Tax Court decision in which taxpayer agreed to a final determination of his taxes for a given year and for which no appeal may be taken, is contemplated by §523(a)(*) for tax discharge purposes.

This Court must agree with Defendant IRS.  The Tax Court is undoubtedly a "nonbankruptcy tribunal" within the meaning of §523(a)(*) of the Bankruptcy Code. But the Tax Court Decision (and the Rule 155 Computation) was not a "written stipulation to a judgment or final order" within the meaning of §523(a)(*) of the Bankruptcy Code, because Plaintiff Green did not admit to liability, reserved his right to appeal the Tax Court's determination of his tax liabilities, and in fact, did appeal.

---

[4]      An alternative argument with respect to the Tax Court Decision made by Plaintiff Green under this provision of §523(a)(*) is addressed in Issue #2 below.

The Bankruptcy Code does not define the term "stipulation", a key word in §523(a)(*).  When the Bankruptcy Code does not define a term used in the statute, the Supreme Court has instructed courts to look to the "ordinary meaning" of the term. *See Ransom v. FIA Card Services, NA*, 131 S. Ct. 716, 724 (2011) (citing *Hamilton v. Lanning*, 130 S. Ct. 2464 (2010)). In addition, in construing the Bankruptcy Code, the statutory context in which the term is used and the purpose of the statute may be considered. *Ransom*, 131 S. Ct. at 724-725.

Looking to the "ordinary meaning" of the term, "stipulation" is defined as:

> an agreement relating to a proceeding, made by attorneys representing adverse parties to the proceeding…‹the plaintiff and defendant entered into a stipulation on the *issue of liability*›…a stipulation relating to a pending judicial proceeding, made by a party to the proceeding or the party's attorney, *is binding* without consideration… (emphasis added).

Black's Law Dictionary (9th ed. 2009).

The statutory context in which the term "stipulation" is used in §523(a)(*) is also instructive.  Section 523(a)(*) defines a tax return, for bankruptcy discharge purposes, as including a "written stipulation to a judgment or a final order entered by a nonbankruptcy tribunal".  Thus, the ordinary meaning of the term "stipulation" and the statutory context in which the term is used in §523(a)(*),   strongly suggests the stipulation made by the taxpayer must be binding as to liability (such as a judgment) and non-appealable (such as a final order) to qualify as a "return" under §523(a)(*). Here, the Tax Court Decision signed by counsel for Plaintiff Green did neither—it was not binding as to the liability of Plaintiff Green and was expressly appealable.

Consideration of the purpose of the BAPCPA amendments, which added §523(a)(*) to the Bankruptcy Code, strengthens the Court's interpretation in this regard. Congress, when drafting §523(a)(*), likely wanted to reward taxpayers that cooperated with the IRS. *See McCoy*, 666 F. 3d at 931 (in the context of differentiating between §6020(a) and §6020(b) returns), citing H.R.REP. No. 109-31 (2005), *reprinted in* 2005 U.S.C.A.N. 88, 92 (hereinafter "House Report") (explaining that BAPCPA was passed, in part, to address the problems of the bankruptcy system having loopholes and incentives that allow and sometimes encourage opportunistic personal filings).  Here, having a taxpayer (like Plaintiff Green) not file income tax returns for the tax years at issue, litigate with the IRS in Tax

16

Court regarding his tax liabilities unsuccessfully, continue to appeal and litigate with the IRS in the Fifth Circuit regarding the tax liabilities (also unsuccessfully), and then file personal bankruptcy shortly thereafter in an effort to discharge the unpaid tax liabilities--can hardly be considered as having cooperated with the IRS.

The Court's interpretation also comports with Congressional purpose behind the non-discharge of certain tax debts. By granting non-dischargable and priority status to certain income tax claims under §523(a)(1) of the Bankruptcy Code, Congress intended to provide the IRS with full and unimpeded opportunity to collect income taxes before they can be discharged in bankruptcy. *See e.g., Bair v. United States (In re Bair)*, 240 B.R. 247, 251-52 (Bankr. W.D. Tex. 1999) (other citations omitted).  If there had been a binding non-appealable stipulation to a Tax Court deficiency judgment by Plaintiff Green (which there was not), then the IRS would have had a sufficient opportunity to assess and collect on the tax liability. On the other hand, if the Tax Court deficiency judgment is appealable and was not final (the situation in our case) the IRS in general must wait until the Tax Court decision becomes final to assess and bring an action to collect the taxes.  *See* 26 U.S.C §6213(a) ("…no assessment of a deficiency in respect of any tax imposed … and no levy or proceeding in court for its collection shall be made … if a petition has been filed with the Tax Court, until the decision of the Tax Court has become final.")[5]

In a similar vein, if the Tax Court Decision and Rule 155 Computation (signed by counsel for Plaintiff Green reserving the right to appeal), constituted a written "stipulation" to a judgment or final order under §523(a)(*), it would undermine the purpose of the non-dischargeability provisions of §523(a)(1)(B).  It would enable a taxpayer to file for and obtain discharge of taxes two years after he entered into such a stipulation while reserving the right to appeal liability for the taxes.[6] Then, if the taxpayer appealed the Tax Court decision, and considering the time necessary for the appeal to be adjudicated, a taxpayer would be able to file bankruptcy and obtain a discharge of the taxes before the IRS had a sufficient opportunity to attempt to collect the taxes.

---

[5]    As discussed in Issue #2 below, the term "final" has a statutorily defined meaning in the Internal Revenue Code. 26 U.S.C. *§7481*.

[6]    In general, if there is a qualifying "return" filed or given by the taxpayer under §523(a)(*), then §523(a)(1)(B)(ii) only excepts from discharge any taxes for which the return was filed or given within <u>two</u> years before the bankruptcy. On the other hand, if the qualifying "return" was filed or given more than two years before the bankruptcy, in general the taxes will be discharged in bankruptcy unless some other exception applies.

In our present case, Plaintiff Green filed bankruptcy on June 30, 2010 (two years and just a few days after the Tax Court Decision was entered) and seeks to discharge the Taxes, less than a year after the Tax Court Decision became "final" after his unsuccessful Fifth Circuit appeal, and only a few months after the IRS filed a tax lien to try to collect the Taxes. This would not be consistent with Congressional intent in passing the BAPCPA amendment that added §523(a)(*). *See supra* House Report, (BAPCPA was passed, in part, to address the problems of the bankruptcy system having incentives that allow and sometimes encourage opportunistic personal bankruptcy filings).  All of this demonstrates that the appealable "stipulation" entered into in Tax Court by Plaintiff Green (such as the Tax Court Decision and Rule 155 Computation) is not the type of "written stipulation" that would be included within §523(a)(*).

The word "stipulate" is present on the last page of the Tax Court Decision merely because the parties stipulated as to the computation of the tax amount based on the Tax Court Opinion, in accordance with Tax Court Rule 155. (DE #15-1, p. 31; DE # 15-1, pp. 9-11; DE #8-1, p. 62). Tax Court Rule 155(a) allows the parties to stipulate to a tax computation pursuant to the Tax Court's determination of the issues, but does not bind the parties to the Tax Court's determination of the issues.  Because this was a stipulation by Plaintiff Green only with regard to the computation of the tax amount based on the Tax Court's legal decision, and was not a stipulation as to the legal issues and liability decided by the Tax Court, it was not legally binding on Plaintiff Green with regards to the deficiency liability and Plaintiff Green still had the right to appeal the Tax Court Decision (which he did).

Furthermore, the IRS Revenue Procedures demonstrate that the Tax Court Decision document in this case was nothing more than the standard decision document submitted by the IRS to the Tax Court any time a decision is entered under Tax Court Rule 155. *See Internal Revenue Manual* 35.11.1 (Exhibit 35.11.1-200) ("the above stipulated paragraphs are common to all stipulated decisions, including settled cases, Rule 155 cases and cases on remand"). When there is a settled deficiency case as to liability, the proposed decision will usually contain a paragraph stating that the taxpayer "waives the restriction contained in I.R.C. §6213(a) prohibiting assessment and collection of the deficiency (plus statutory interest) until the decision of the Tax Court has become final." *Id.* Here, there is no such waiver by the taxpayer Plaintiff Green in the Tax Court Decision signed by his counsel. This also demonstrates it was merely for a Rule 155 computation situation.

18

Examination of analogous case law also buttresses the Court's decision.  When parties consent to entry of a judgment, they waive their right to appeal. *See Swift & Co. v. United States*, 276 U.S. 311, 324 (1928). In the Tax Court context, this rule has been applied to mean that a taxpayer has waived its right to appeal when a taxpayer has stipulated to entry of a Tax Court decision for a tax deficiency. *See Tapper v. Commissioner,* 766 F.2d 401, 403 (9th Cir. 1985) (taxpayer cannot appeal a stipulated decision in Tax Court, when taxpayer's stipulation provided "it is hereby stipulated that the Court may enter the foregoing decision in this case"); *White v. Commissioner*, 776 F.2d 976, 978 (11th Cir. 1985) (taxpayer who "stipulated" to entry of judgment in Tax Court for reduced tax deficiencies, waived right to appeal).

Here, in stark contrast, Plaintiff Green did not waive his right to appeal by his counsel's signature on the Tax Court Decision (and Rule 155 Computation)—instead Plaintiff Green expressly reserved his right to appeal and to continue to contest the tax liabilities.  (DE #15-1, p. 31; DE #15-1, p.11). And in fact, Plaintiff Green appealed the Tax Court Decision to the Fifth Circuit. *See* Fifth Circuit Opinion, 322 F. App'x. at 413 (DE #10, pp. 28-35).

Accordingly, for any and all of these reasons and the reasons set forth in Issue #2 below, the Court concludes that, as a matter of law, there has been no "written stipulation to a judgment or a final order entered by a nonbankruptcy tribunal" that would constitute a return under §523(a)(*) of the Bankruptcy Code for the Taxes.

### d. Has there an "equivalent report or notice" within the meaning of §523(a)(1)(B) of the Bankruptcy Code that has the effect of discharging the Taxes?

As his next argument, Plaintiff Green asserts that his treaty-based "disclosure documents" that he submitted to the IRS were an "equivalent report or notice" under §523(a)(1)(B) of the Bankruptcy Code. As this argument goes, he did not need to file a tax "return" because he filed an equivalent report or notice, and thus the Taxes have been discharged.

In pertinent part, §523(a)(1)(B) of the Bankruptcy Code provides:

> (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—
>   (1) for a tax…—
>       (B) with respect to which a *return, or equivalent report or notice*, *if required*—

19

(i) was not filed or given ....

11 U.S.C. §523(a)(1)(B) (emphasis added).

Plaintiff Green interprets §523(a)(1)(B) to mean that if he filed a "equivalent report or notice," then he does not have to file a "return" to discharge the Taxes.  And, he claims that his treaty-based "disclosure documents" constituted such an "equivalent report or notice" and were filed on time; thus, the Taxes have been discharged.

Plaintiff Green is misinterpreting the statutory language of §523(a)(1)(B), as the "equivalent report or notice"  language in the statute is irrelevant because Plaintiff Green failed to file the required "return." As confirmed by case law and leading commentators, the statute must be interpreted to read that if a debtor-taxpayer fails to file a required return, *or* fails to file a required notice, *or* fails to file a required report, then the taxes are excepted from discharge.

The purpose of the "equivalent report or notice" language in §523(a)(1)(B) is to preclude the discharge of debt when the debtor failed to file a report or notice relating to the tax liability that was required in <u>addition to</u> a tax return. This issue was recently addressed by the Fourth Circuit in the case of *State of Maryland v. Ciotti* (*In re Ciotti),* 638 F3d 276, 279-80 (4th Cir. 2011). In *Ciotti*, the debtor-taxpayer argued (like Plaintiff Green does here) that Congress amended §523(a)(1)(B) to "allow dischargeability of tax debt for debtors who failed to file a required return but nevertheless gave or filed an equivalent report or notice". 638 F3d at 280. In a well-reasoned opinion, the Fourth Circuit rejected such argument, found that the language of §523(a)(1)(B) was not susceptible to the debtor-taxpayer's interpretation, and was not what Congress intended. The Fourth Circuit also stated that through the addition of the language "or equivalent report or notice" to §523(a)(1)(B), Congress "clearly expanded" (not contracted) the requirements that must be met to discharge taxes in bankruptcy. *Id.*

In the words of the Fourth Circuit in *Ciotti*, "[i]t is apparent from the changes that Congress determined that the same policy reasons that justify precluding the discharge of tax debt when the debtor failed to file a return also justify precluding the discharge of the tax debt when the debtor failed to file or give a required report or notice corresponding to that debt." 638 F3d at 279-280. Citing to the legislative history of the BAPCPA amendments to the Bankruptcy Code, the Fourth Circuit in *Ciotti* found that in amending §523(a)(1)(B), Congress made it applicable not only to the failure to file a required tax return, but also to

20

the failure to file a required "report or notice". 638 F3d at 279; *supra* House Report. The Court agrees with the Fourth Circuit's analysis, and finds that Plaintiff Green's argument that no tax return is required and that just a "report or notice" is sufficient under §523(a)(1)(B) to discharge taxes, has no merit.

The Court's interpretation of §523(a)(1)(B) is also consistent with a leading commentator's reading of the statute, as well as other case law construing this language in §523(a)(1)(B).  For the required "report or notice" language in §523(a)(1)(B) to be applicable to discharge taxes, the debtor must have filed a tax return. *See Collier on Bankruptcy* ¶ 523.07[3][a] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2010), which states: "[t]he reference to the failure to provide 'notice' means that if a debtor is obligated under nonbankruptcy law to file an *amended* return or give notice to a governmental unit of an *amendment or correction to a prior filed federal tax return*, the failure to do so will render nondischargable any corresponding tax liability…"(emphasis added); *Shorton v. Massachusetts (In re Shorton)*, 375 B.R. 26, 32 (Bankr. D. Mass. 2007) (debtor that filed state tax return, but then failed to file a required "report or notice"  reflecting adjustments to such filed tax return, resulted in taxes being excepted from discharge under §523(a)(1)(B)).

To accept Plaintiff Green's interpretation of §523(a)(1)(B)-- that no tax return need be filed, only a report or notice to discharge taxes-- would also render the language of §523(a)(*) inoperative or superfluous. Section 523(a)* defines "return" as a return that satisfies the requirements of applicable nonbankruptcy law (including applicable filing requirements). If one could just discharge taxes by filing some type of notice or report that is not a tax return, then §523(a)(*) and its definition of "return" would become meaningless. This would be contrary to well-established principles of statutory interpretation of the Bankruptcy Code.  *See Bank of Am. v. 203 LaSalle St. P'ship*, 526 U.S. 434, 452 (1999); *see also In re Luongo,* 259 F.3d 323, 340 (5th Cir. 2001) (effect is to be given to every word of a statute if possible, so that no portion of a statute is rendered redundant, inoperative, or superfluous).

In short, Plaintiff Green's treaty-based "disclosure documents" do not constitute a "equivalent report or notice as required" within the statutory language of §523(a)(1)(B) that would result in the discharge of the Taxes. Plaintiff Green never filed returns for the Taxes, and merely filing a report or notice does not discharge the Taxes.

Accordingly, for any and all of these reasons, the Court concludes that, as a matter of law, that Plaintiff Green's disclosure documents are not an "equivalent report or notice" within the meaning of §523(a)(1)(B) that has the effect of discharging the Taxes.

**ISSUE #1- Conclusion.**

Because there is no genuine dispute as to a material fact and the Court concludes as a matter of law that a "return" under §523(a)(*) for the Taxes was not "filed or given," Plaintiff's MSJ must be denied and Defendant IRS is entitled to summary judgment that the Taxes are excepted from discharge under  §523(a)(1)(B)(i) of the Bankruptcy Code.

**ISSUE #2. Are the Taxes excepted from discharge by §523(a)(1)(B)(ii)?**

Plaintiff Green has an additional alternative argument as to why the Taxes should be discharged that the Court will now address separately. Plaintiff Green has argued that the Tax Court Decision was a "return" under §523(a)(*), and thus §523(a)(1)(B)(i) does not except the Taxes from discharge.  His alternative argument is that the Tax Court Decision rendered on June 27, 2008 was a "final order of a nonbankruptcy tribunal" that qualifies as a "return" under §523(a)(*), even if he did not make a "stipulation" to the Tax Court Decision. Here, basically Plaintiff Green interprets the language in §523(a)(*) defining a return as including "a written stipulation to a judgment or a final order entered by a nonbankruptcy tribunal"  as providing <u>two</u> separate possibilities that qualify as a return—(1) "a written stipulation to a judgment" and (2) "a final order entered by a nonbankruptcy tribunal"(i.e., the Tax Court).  And, taking his argument to its logical conclusion, since the Tax Court Decision constituted a "return" under §523(a)(*) when it was entered on June 27, 2008 (and just a few days more than two years before Plaintiff Green's bankruptcy filing on June 30, 2010), the Taxes have been discharged and the exception to discharge of taxes provided by §523(a)(1)(B)(i) and §523(a)(1)(B)(ii) do not apply.

The Court rejects Plaintiff Green's interpretation of §523(a)(*) in this regard because it is contrary to the plain reading of the statute.  Alternatively, the Court holds that even if Plaintiff Green's interpretation is accepted, then the Taxes are still excepted from discharge under §523(a)(1)(B)(ii) of the Bankruptcy Code.

The critical phrase of §523(a)(*) at issue is emphasized below:

> Such term includes a return prepared pursuant to section 6020(a) of the Internal Revenue Code of 1986, or similar State or local law*, or a written stipulation to a judgment or a final order entered by a nonbankruptcy tribunal*, but does not include a return made pursuant to section 6020(b) of the Internal Revenue Code of 1986, or a similar State or local law.(emphasis added)

11 U.S.C. §523(a)(*).

Under Plaintiff Green's interpretation, the word "stipulation" does not modify the language "final order of a nonbankruptcy tribunal" in §523(a)(*). In other words, he argues that it is not necessary for him to have entered into a written stipulation to the Tax Court Decision for the Decision to be considered a return. Plaintiff Green's interpretation, however, is contrary to the plain meaning of the statute. The double use of the word "or" as a coordinating conjunction in the phrase ("*or* a written stipulation to a judgment *or* a final order entered by a nonbankruptcy tribunal") is the root of Plaintiff Green's interpretation. Significantly however, the first "or" in the phrase is preceded by a comma, and the words at the end of the phrase ("nonbankruptcy tribunal") ends with a comma. The exact statutory language is "*,[comma]or a written stipulation to a judgment or a final order entered by a nonbankruptcy tribunal,[comma]*" [added]. Grammatically, this means that "final order entered by a non-bankruptcy tribunal" is the final item in the phrase delineated by the two commas, and demonstrates that the words "written stipulation" modify the words "final order entered by a non-bankruptcy tribunal" as well as words "to a judgment".[7] The second "or" in the phrase (relied upon by Plaintiff Green) is not the final possibility in the list of qualified returns in this phrase, but instead includes "final order of a nonbankruptcy tribunal" as an additional type of a "written stipulation" that can operate as a return. Further, Plaintiff Green's interpretation of the second "or" in the phrase as being exclusive would be in conflict with the statutory rules of construction set forth in the Bankruptcy Code. See 11 U.S.C §102(5) (the word "or" is not exclusive).

Accordingly, the Court finds that the plain and proper reading of the phrase in §523(a)(*) at issue is that a written stipulation to a judgment or a written stipulation to a final order of a nonbankruptcy tribunal, will qualify as a return. Indeed, why would Congress

---

[7]     *See e.g., United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241 (1989) (grammatically, when a phrase in the Bankruptcy Code is set aside by commas, it stands independent of the language that follows).

require a "written stipulation to a judgment" by a taxpayer for it to qualify as a tax return for tax debt discharge, but not require a "written stipulation to a final order of a non-bankruptcy tribunal" to qualify as a tax return for tax debt discharge? This is effectively Plaintiff Green's argument—that a debtor taxpayer only need enter into a written stipulation to a judgment to qualify as a tax return and discharge the taxes, but that a debtor-taxpayer need not enter into a written stipulation as to a final order of a nonbankruptcy tribunal (i.e., the Tax Court) for it to qualify as a tax return and discharge the taxes. Plaintiff Green's argument and interpretation of the statute would lead to an absurd result, is not in accord with the plain meaning rule, and cannot be accepted by the Court. *See e.g., United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241 (1989)(when the statute's language is plain, the sole function of the courts is to enforce the statute according to its terms where the disposition required by the text is not absurd).

Consideration of the purpose of the BAPCPA amendments, which added §523(a)(*) to the Bankruptcy Code, strengthens the Court's reading and interpretation of this central phrase at issue in §523(a)(*). As noted earlier, Congress, when drafting §523(a)(*), likely wanted to reward taxpayers that cooperated with the IRS. *See McCoy,* 666 F. 3d at 931; *supra* House Report.  To reward taxpayers that cooperated with the IRS by entering into a written stipulation as to their tax liability (whether it be a written stipulation to a judgment or a written stipulation to a final order of the Tax Court) would promote this cooperative legislative purpose. On the other hand, to accept Plaintiff Green's suggestion that no written stipulation to a final order of the Tax Court is necessary to qualify as a "return" and discharge taxes in bankruptcy, would be at odds with this Congressional purpose.

In conclusion, the Court determines that the Tax Court Decision was not a "final order of a nonbankruptcy tribunal" that qualifies as a "return" under §523(a)(*), because Plaintiff Green did not enter into a "written stipulation" to the Tax Court Decision. For this reason and the reasons set forth in Issue #1 above, the Taxes are excepted from discharge under  §523(a)(1)(B)(i) because no return was filed or given for the Taxes.

Alternatively, even if Plaintiff Green's interpretation of this critical phrase in §523(a)(*) is correct (i.e., it is not necessary for the debtor-taxpayer to enter into a written stipulation to a final order of a non-bankruptcy tribunal to constitute a "return" for tax debt discharge), the Court still concludes that the Taxes are excepted from discharge under

§523(a)(1)(B)(ii).[8] Simply put, this is because the order of the non-bankruptcy tribunal (here, the Tax Court Decision) did not become "final" until July of 2009.

In pertinent part, §523(a)(1)(B)(ii) of the Bankruptcy Code provides:

> (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—
>> (1) for a tax…—
>>> (B) with respect to which a *return*, or equivalent report or notice, if required—
>>>> (ii) *was filed or given* after the date on which such return, report or notice was last due, under applicable law or under any extension, and *after two years before the date of filing of the petition.* (emphasis added)

11 U.S.C. §523(a)(1)(B)(ii).

In simple terms relevant here, if a "return" is filed or given less than two years before the debtor filed his bankruptcy petition, then the taxes are excepted from discharge under §523(a)(1)(B)(ii).  Without this exception to discharge, a taxpayer that had failed to file tax returns and managed to elude the IRS for many years could file all his returns quickly, immediately file for bankruptcy, and get a discharge of his taxes without providing the IRS an opportunity to collect the taxes.[9]

In one of the variations of his multifarious arguments, Plaintiff Green is relying on the Tax Court Decision as the qualifying tax "return" under §523(a)(*) of the Bankruptcy Code. Section 523(a)(*) defines a qualifying tax "return" as including "*a **final** order entered by a nonbankruptcy tribunal*".  It is not and cannot be disputed that the Tax Court is a "nonbankruptcy tribunal" and that the Tax Court Decision is an "order" within the meaning of §523(a)(*). The key issue here, however, is whether and when the Tax Court Decision became ***"final"***—as §523(a)(*) expressly requires that the order of the nonbankruptcy tribunal (Tax Court) be "final" to constitute a qualifying tax return.

---

[8]      In Plaintiff's MSJ, Plaintiff Green expressly requested the Court to determine that he has met the requirements of §523(a)(1)(B) for discharge of the Taxes. (DE#15, p.5).  Section §523(a)(1)(B)(ii), addressed in this part of the Court's Opinion, is part of §523(a)(1)(B).

[9]      Section 507(a)(8) of the Bankruptcy Code basically provides that tax debts are excepted from discharge if the required filing date for such debts was within three years before the bankruptcy petition or the taxes were assessed within 240 days before the bankruptcy petition. Without §523(a)(1)(B)(ii), if the taxes were for tax years more than three years old, the IRS only has 240 days after assessing the debt to fully collect, otherwise the taxpayer could file bankruptcy and discharge the tax debt.

To this point, Defendant IRS argues that the meaning of "final" is defined in the Internal Revenue Code (26 U.S.C. §7481), because the order at issue is from the Tax Court for a federal income tax liability. The Court agrees.

Section 7481 of the Internal Revenue Code (herein "IRC") is aptly entitled "Date When Tax Court Decision Becomes Final". In pertinent part, §7481 of the IRC provides as follows:

> (a) **Reviewable decisions**. Except as provided in subsections (b), (c), and (d), *the decision of the Tax Court shall become final—*
>
> (1) **Timely notice of appeal not filed.** Upon the expiration of the time allowed for filing a notice of appeal, if no such notice has been duly filed within such time; or
>
> (2) **Decision affirmed or appeal dismissed**.
> (A) **Petition for certiorari not filed on time**. *Upon the expiration of the time allowed for filing a petition for certiorari, if the decision of the Tax Court has been affirmed or the appeal dismissed by the United States Court of Appeals and no petition for certiorari has been duly filed*; or
> (B) **Petition for certiorari denied**. Upon the denial of a petition for certiorari, if the decision of the Tax Court has been affirmed or the appeal dismissed by the United States Court of Appeals; or
> (C) **After mandate of Supreme Court**. Upon the expiration of 30 days from the date of issuance of the mandate of the Supreme Court, if such Court directs that the decision of the Tax Court be affirmed or the appeal dismissed. (emphasis added)

26 U.S.C. §7481(a).

Here, the Tax Court Decision was entered on June 27, 2008. (DE#15-1, pp. 30-31). Plaintiff Green then appealed the Tax Court Decision to the Fifth Circuit Court of Appeals. The Fifth Circuit affirmed the Tax Court Decision in all respects by its opinion entered April 23, 2009. *See Green v. Commissioner*, 322 F. App'x. 412, 415 (5th Cir. 2009) (DE #10, p. 28-35) (herein "Fifth Circuit Opinion"). No petition for certiorari was filed with respect to the Fifth Circuit Opinion. Under IRC §7481(a)(2)(A), when Plaintiff filed a notice of appeal of the Tax Court Decision and the Tax Court Decision was affirmed on appeal by the Fifth Circuit Court of Appeals, the Tax Court Decision became "final" upon expiration of the time for filing a petition for certiorari to the Supreme Court. The time expired for filing a petition for certiorari 90 days after the Fifth Circuit Opinion was issued on April 23, 2009—which would

have been in July 2009. *See Sup. Ct. R. 13* ("a petition for writ of certiorari… is timely when it is filed with the Clerk of this Court within 90 days…). Thus, the Tax Court Decision did not become "final" under IRC §7481(a) until July 2009.

Accordingly, the "return" under §523(a)(*) of the Bankruptcy Code upon which Plaintiff Green relies—the Tax Court Decision—did not become "final" until July 2009. Section 523(a)(*) expressly requires that to be a considered a "return" for tax debt discharge, the order of the nonbankruptcy tribunal (Tax Court) must be "final".  Section 523(a)(1)(B)(ii) of the Bankruptcy Code excepts from bankruptcy discharge a "return" that was filed or given less than two years  before the debtor filed a bankruptcy petition. Here, the "return" (the Tax Court Decision) was not filed or given until July 2009 when it became "final", and Plaintiff Green filed this bankruptcy case in June 2010, less than one year later. Thus, in any event, the Taxes are excepted from discharge under 523(a)(1)(B)(ii) since the "return" was filed or given less than two years before Plaintiff Green filed his bankruptcy case.

**ISSUE #2- Conclusion.**

There is no genuine dispute as to a material fact and the Court concludes as a matter of law that the Tax Court Decision was not a "final order of a nonbankruptcy tribunal" that qualifies as a "return" under §523(a)(*), because Plaintiff Green did not enter into a "written stipulation" to the Tax Court Decision as required by the statutory language of §523(a)(*). As a result, the Taxes are excepted from discharge under §523(a)(1)(B)(i) for this reason and the reasons set forth in Issue #1 above.

As an alternative holding, if no "written stipulation" to the Tax Court Decision is required to constitute a "return" under §523(a)(*), the Court finds that there is no genuine issue as to material fact and concludes as a matter of law that the Taxes are still excepted from discharge under §523(a)(1)(B)(ii) because the Tax Court Decision did not become "final" until July 2009.

Therefore, Plaintiff's MSJ must be denied and Defendant IRS is entitled to summary judgment as the Taxes are excepted from discharge under §523(a)(1)(B)(i), or alternatively, §523(a)(1)(B)(ii) of the Bankruptcy Code.

B.  **VALIDITY OF TAX LIEN AND AMOUNT OF UNPAID TAXES**

In Plaintiff's MSJ, Plaintiff Green asserted that the federal tax lien filed by the IRS is invalid. In his Complaint, Plaintiff Green also sought a determination of the validity and extent of the federal tax lien on Plaintiff Green's property and amount of any unpaid taxes. The Court no longer needs to address these issues substantively because the parties have since resolved these issues by a Joint Supplement to Summary Judgment Record (herein "Joint Supplement Stipulation") filed on February 24, 2012 (DE #40).

In the Joint Supplement Stipulation, Plaintiff Green and Defendant IRS stipulated  in this adversary proceeding that (1) if the Court determined that Plaintiff Green's federal tax liabilities for the years 1997, 1999, and 2000 are not discharged in this bankruptcy case, then as of February 14, 2012, the unpaid amount of Plaintiff Green's federal tax liability for the 1997 year is $71,087.54, for the 1999 tax year is $4,429.56, and for the 2000 tax year is $3,874.72 (herein "Taxes"); and (2) if the Court determined that the Taxes are not discharged in this bankruptcy case, then the IRS federal tax lien is properly filed in the foregoing amounts and attaches to all of Plaintiff Green's real and personal property.

As the Court has now determined in this Opinion that the Plaintiff Green's Taxes are not discharged in this bankruptcy case, the Joint Supplement Stipulation between the parties resolves the issues raised by Plaintiff Green as to the validity and extent of the federal tax lien and the amount of unpaid taxes.

## VI. CONCLUSION AND ORDER

Plaintiff Green, a frequent visitor to the Bankruptcy Court, and no stranger to the Tax Court and Fifth Circuit, has raised multiple creative and often novel arguments to the Court regarding why his federal income taxes have been discharged in this bankruptcy case. Although Plaintiff Green may be commended for his ingenuity, in the end the Court cannot accept these arguments as a matter of law.  The Court concludes that there is no genuine issue of material fact and as a matter of law, the Taxes owed by Plaintiff Green have not been discharged in this bankruptcy case, the IRS is entitled to summary judgment that the Taxes have not been discharged, and Plaintiff Green's request for summary judgment must be denied.

Accordingly, it is hereby

**ORDERED** that Defendant's MSJ is GRANTED; it is further

**ORDERED** that Plaintiff's MSJ is DENIED; it is further

28

**ORDERED** that Plaintiff's outstanding federal tax liabilities for the years 1997, 1999, and 2000 have not been discharged in this bankruptcy case, and as of February 14, 2012, the unpaid amount of Plaintiff's federal tax liability for the 1997 year is $71,087.54, for the 1999 tax year is $4,429.56, and for the 2000 tax year is $3,874.72 (herein "Taxes"); it is further

**ORDERED** the IRS federal tax lien is properly filed for the amount of the Taxes and attaches to all of Plaintiff's real and personal property.

A separate judgment will be entered by the Court of even date herewith that incorporates this Opinion.

**###**